Argued June 16, affirmed as modified July 28, 1975

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF
LAKE, *Appellant,* and LAKE (No. 74-1653),
*Respondent.*
538 P2d 97

*Lawrence F. Cooley,* Eugene, argued the cause for appellant. With him on the brief were Cooley & Honsowetz, Eugene.

*Robert B. Dugdale,* Eugene, argued the cause for respondent. With him on the brief were Sahlstrom, Lombard, Starr & Vinson, Eugene.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

FOLEY, J.

The husband appeals from that portion of a dissolution decree which allowed marital support in an amount greater and for a longer period than he considers proper. He also contends, contrary to the court's determination, that the wife should be required to assume and pay a loan from the husband's mother used in purchasing the family home which was awarded to the wife.

The parties were married in 1963. Custody of their one daughter, born August 31, 1971, was awarded to the wife. The husband is paying $200 per month in child support and does not contest this provision. Both parties were 33 years old at the time the decree was granted and both are healthy. The husband, a lawyer, has a net income of over $1,500 per month

while the wife receives $462.40 net per month working as a teacher for four periods out of seven every school day.

The wife began a program for a master's degree in 1963 but postponed her program in order to provide the primary support for the family until the fall of 1967, when the husband finished law school and began working full time. The wife has now established a program which will allow her to both receive a master's degree and begin working full time in the fall of 1977, when the daughter reaches school age.

■ The parties cannot separately maintain quite the same high standard of living they enjoyed together, but our effort is to attempt to ensure that they separate on as equal a basis as possible in these circumstances. *Jones and Jones,* 20 Or App 575, 532 P2d 805 (1975); *Colbath and Colbath,* 15 Or App 568, 516 P2d 763 (1973).

The trial court decree requires the husband to pay the wife $400 per month in marital support to August 31, 1977, and $150 per month until March 1, 1980. The trial court reasoned that this would allow the wife enough income so she could get her master's degree while working part time and caring for the child, and that it would also allow the wife sufficient support during a transition period so she could establish herself in her profession. The husband contends that only $200 a month in marital support should be awarded and that it should terminate in September 1975.

The husband's monthly expenses, absent repayments on loans from his parents, run to about $800.[1]

---

[1] The husband received over $2,300 for entertainment expenses from his law firm in 1974, but this is not included in his listing of personal expenses.

The husband says he needs $300 more per month to pay principal and interest on loans from his parents, which would leave only $400 for child and marital support, but in the past the repayment schedule for those loans has been very flexible.

■ The monthly expenses of the wife and child should run to about $950.[2] The record does not support the allowance of $400 to the wife as this figure, combined with her income ,and child support, allows her $1,062 per month whereas her expenses are at most $100 less. We therefore reduce the marital support award to $300 per month through August 31, 1977. This will allow both the husband and wife to meet all of their expenses, while the husband still will have about $200 per month available to repay his family loans.

We affirm the award of $150 per month marital support from September 1, 1977, to March 1, 1980. This will allow the wife to continue some semblance of her former standard of living as she has opportunity to enter into a full-time professional career.

Turning to the property division, the husband's award has a net value of over $20,500. This included a sports car, personal property, two boats, his country club membership, some shares of a mutual fund, his interest in investment properties, a summer cabin, his current residence, and his interest in his law firm (valued by the husband at $5,000).[3] The husband also was ordered to assume $15,819 in loans from his parents. The award to the wife has a net value of approx-

---

[2] The wife testified that monthly expenses for her and the child total $999.45. Other evidence supports only a monthly figure of $850; this is exclusive of travel, entertainment, and miscellaneous expenses, all of which should result in monthly expenses of about $950 for the wife and child.

[3] This valuation reflects only the value of his share of assets and accounts receivable.

imately $25,500, but, unlike the husband, the wife received no income-producing or investment property. She received the family home, personal property, jewelry, and a 1972 station wagon.

The husband contends the distribution of assets and liabilities should be revised only to the extent that the wife should be ordered to assume the obligation on a $5,000 loan from the husband's mother. The proceeds from the loan were used to make the down payment on the family home. Only one of the several loans made by the husband's parents has been repaid. The $5,000 down-payment loan was made in 1969. The terms of repayment were described by the husband as follows:

"A. That was the bottom of her five thousand dollar savings account and it was to be paid—the interest was to be paid annually and the balance was to be paid when I could pay it. It was money she didn't have to have right then.

"Q. Have you paid the interest annually?

"A. I have fallen behind. I was current to about 1972 or 1973. I believe in 1974 I only paid about a third of the interest."

The trial court properly considered the very informal nature of the obligations to the husband's parents, including the great flexibility allowed regarding repayment. It also properly considered the investment and income nature of the property awarded the husband as opposed to that awarded the wife. The property division was appropriate in these circumstances. *Hazard and Hazard,* 17 Or App 229, 521 P2d 29 (1974); *Daly v. Daly,* 3 Or App 130, 472 P2d 850 (1970)

Affirmed as modified.